# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**WILLIAM J. DAUGHERTY**                                                               **PLAINTIFF**

**v.**                            **CIVIL ACTION NO. 5:17-CV-P41-TBR**

**K.S.P. MEDICAL DEPARTMENT** *et al.*                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the Court for screening of Plaintiff's third amended complaint pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

## I. PROCEDURAL HISTORY

Plaintiff is incarcerated at Kentucky State Penitentiary (KSP). On July 6, 2017, this Court conducted an initial screening of Plaintiff's complaint and two amended complaints (DN 16). In these documents, Plaintiff named "K.S.P. Medical Department" and Dr. Shastine Tangilag, in her official capacity only, as Defendants in this action. Plaintiff then made numerous allegations related to his medical care at KSP. Upon review, the Court allowed only one claim to proceed: an official-capacity claim against Dr. Tangilag based upon Plaintiff's allegation that only Caucasian inmates at KSP were permitted to see Dr. Tangilag while inmates of all other races were required to see a nurse practitioner. However, because Plaintiff's complaint and amended complaints contained several detailed allegations regarding his dissatisfaction with the medical care he was receiving at KSP, the Court allowed Plaintiff the opportunity to amend his complaint one final time to name as Defendants in their individual

capacities any officials whom he believed had violated his constitutional right to receive appropriate medical care. It is this amended complaint that is now before the Court for review.

## II. SUMMARY OF THIRD AMENDED COMPLAINT

In his third amended complaint, Plaintiff names Dr. Shastine Tangilag as a Defendant in her individual capacity. Plaintiff alleges that Dr. Tangilag responded to a medical grievance he had filed by stating that Plaintiff was suffering from the symptoms he complained of because he refused to wear bifocal eye glasses. Plaintiff seems to suggest that because Dr. Tangilag had not physically examined him, she should not have responded to this grievance, and the medical grievance committee should not have accepted her response. Plaintiff also faults Dr. Tangilag for not allowing him to see another doctor for a second opinion. Finally, Plaintiff reiterates in this complaint that Dr. Tangilag would not see non-white inmates, including himself, for physical examinations.

## III. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### IV. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). Here, Plaintiff alleges that Dr. Tangilag refused to see both himself and other inmates because they were not Caucasian. The Court will allow this individual-capacity claim to proceed against Dr. Tangilag at this time.

### B. Fourteenth Amendment Due Process Claim

Plaintiff also alleges that Dr. Tangilag violated his rights by wrongfully responding to a medical grievance that he had filed. However, responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under §1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (denial of grievance concerning alleged retaliation stated no more than a claim based upon *respondeat superior*, where defendants did

4

not participate directly in alleged retaliatory conduct); *Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) ("Prison officials are not liable under § 1983 for denying or failing to act on grievances."). Thus, the Court will dismiss this claim against Dr. Tangilag for failure to state a claim upon which relief may be granted.

### C. Eighth Amendment Deliberate Indifference to a Serious Medical Need Claim

Finally, Plaintiff alleges that Dr. Tangilag refused to refer him to another physician for a second opinion regarding his deteriorating eye-sight, and perhaps other symptoms as well. The Court construes this allegation as a claim for deliberate indifference to a serious medical need.

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id*. Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 895-96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787-88 (6th Cir. 2011). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

5

> inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted).

Here, Plaintiff's allegation against Dr. Tangilag is insufficient to support a claim of deliberate indifference to a serious medical need. In his complaint and first and second amended complaints, Plaintiff indicates that the symptoms about which he complains began in 2015 when he began feeling sore, light-headed, and having impaired eyesight. However, he also states that as a result of these symptoms, he was "taken to medical," where medical officials kept him for three days and ran various tests. He states that he was eventually told that he had arthritis over 60 percent of his body and diabetes. Plaintiff indicates that he has been seen by a nurse practitioner and an optometrist regarding these issues. He further indicates that the medical department continues to take his blood and monitor his condition and that that he has been prescribed medication for his diabetes.

These allegations reflect that Plaintiff has been seen by different medical providers, received diagnoses, and been offered treatment for his medical conditions. As noted above, although Plaintiff may disagree with the type of care he is receiving or believe that it is inadequate, this is insufficient to state a claim for deliberate to a serious medical need. Thus, the Court will dismiss this claim against Dr. Tangilag for deliberate indifference to a serious medical need.

### V. LETTERS TO THE OFFICE OF THE CLERK

The Court will now address two letters that Plaintiff mailed to the Office of the Clerk in conjunction with his third amended complaint (DNs 15 & 18). At the outset, the Court advises

Plaintiff that letters to the Office of the Clerk are generally only appropriate in two instances - to advise the Clerk of a change in address or to request a copy of the docket sheet. All other matters should be filed with the Court in the form of a motion or a response to a motion. Nonetheless, on this occasion only, the will Court address the issues raised by Plaintiff in these two letters.

In these letters, Plaintiff references specific allegations regarding his medical care which he first made in his second amended complaint (DN 11). He again states that on May 2, 2017, at 2:45 a.m., "I woke up in a lot of pain, my chest was hurting my arm and my hip as well as my leg, the pain was great at times, to I thought I would die, That is when they call a nurse over . . ." Plaintiff alleges that the nurse told him that his pain may be due to his arthritis and that it would pass after a few hours. Plaintiff states that as a result of this incident, he signed up for "sick-call" and was seen by another nurse. He states that this nurse told him that his pain was probably being caused by high blood pressure and that he received an "E.K.G." Plaintiff claims, however, that he is still in pain and that the medical department will not give him "anything for the pain" because they do not know what is causing it. He states that the medical officials have told him that once a doctor determines what is causing Plaintiff's pain, they will be able to treat it. However, Plaintiff indicates that he may not be able to see the doctor for "another month." Finally, he states that even if he [doesn't] have a claim," he simply wants to know what can be done about his pain.

Based on the deliberate indifference standard set forth above, Plaintiff's allegations fail to state a claim upon which relief can be granted. These allegations show that in the few months between the time Plaintiff experienced his "night episode" and filed his last letter with the Court, he has been seen by medical providers on at least two occasions and received diagnostic tests.

Thus, Plaintiff is receiving medical care for the symptoms about which he complains. Moreover, "[a] prisoner's allegation that a prison has failed to treat [a prisoner's] condition adequately . . . is evaluated under the effect-of-delay standard[,]" which "requires the submission of verifying medical evidence to establish 'the detrimental effect of the delay in medical treatment.'" *Anthony v. Swanson*, No. 16-3444, 2017 U.S. App. LEXIS 12681, at *8 (6th Cir. July 14, 2017) (quoting *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citation omitted)). Thus, for example, in *Loukas v. Gundy*, 70 F. App'x 245 (6th Cir. 2003), the Sixth Circuit affirmed a district court's dismissal on initial review for failure to state a claim where a prisoner had to walk on a broken foot for 24 days without crutches or pain medication because of a delay in having his foot x-rayed. Because Loukas did not allege or show that he suffered any detrimental effect from the delay in treatment, the Sixth Circuit held that the fact that Loukas suffered some discomfort before he received pain medication was not sufficient to state an Eighth Amendment claim. *Loukas v. Gundy*, 70 F. App'x at 247. Thus, even though Plaintiff claims that the delay in seeing a physician is causing the continuation of his pain, these allegations are not sufficient to give rise to a constitutional claim.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's individual-capacity claims against Dr. Shastine Tangilag for violations of Plaintiff's rights in regard to the grievance process and for deliberate indifference to a serious medical need are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will allow Plaintiff's Fourteenth Amendment equal protection claim to proceed against Dr. Shastine Tangilag in both her official and individual capacities. The Court

8

notes that Plaintiff's official-capacity claim is actually against her employer, Correct Care Solutions.

The Court will enter an Order Directing Service and Scheduling Order to govern these continuing claims.

Date:


cc: Plaintiff, *pro se*
      Defendant Dr. Tangilag
      Defendant Correct Care Solutions
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.011