UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

WILLIAM J. DAUGHERTY                                         PLAINTIFF

v.                                CIVIL ACTION NO. 5:17-CV-P41-TBR

K.S.P. MEDICAL DEPARTMENT *et al.*                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the remaining Defendants in this action, Correct Care Solutions, LLC (CCS), and Dr. Shastine Tangilag, to dismiss the claims against them (DN 33). Fully briefed, this matter is ripe for consideration. For the following reasons, the Court will deny the motion.

*Pro se* Plaintiff William J. Daugherty initiated this 42 U.S.C. § 1983 action on March 17, 2017. The Court conducted an initial review of the complaints and amended complaints pursuant to 28 U.S.C. § 1915A and dismissed several claims therein, but allowed Plaintiff's Fourteenth Amendment Equal Protection claim to proceed against Dr. Tangilag in both her official and individual capacities based upon his allegation that Dr. Tangilag would only see Caucasian inmates and required inmates of all other races to see a nurse practitioner (DNs 16 & 21). The Court then construed Plaintiff's official-capacity claim against Dr. Tangilag as one actually brought against her employer, CCS. In so doing, the Court noted that "official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

# I.

Courts apply the same standard under § 1915A as they do when addressing a motion under Fed. R. Civ. P. 12(b)(6). *Moniz v. Cox*, 512 F. App'x 495, 497 (6th Cir. 2013); *Wilder v. Collins*, No. 2:12-cv-0064, 2012 U.S. Dist. LEXIS 64231, at *12-13 (S.D. Ohio May 8, 2012) ("When a complaint is screened under § 1915A, it is subjected to the same scrutiny as if a motion to dismiss for failure to state a claim had been filed under Fed. R. Civ. P. 12(b)(6)."). As another district court stated, "[A] motion to dismiss under Rule 12(b)(6) is almost never an appropriate response when the court has already screened a prisoner complaint pursuant to 28 U.S.C. § 1915A(b) and directed the defendant to respond." *Moreno v. Beddome*, No. CV 11-2333-PHX-DGC, 2012 U.S. Dist. LEXIS 107901, at *4 (D. Ariz. Aug. 2, 2012).

Under both § 1915A and Fed. R. Civ. P. 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). In addition, "[a] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

*Pardus*, 551 U.S. 89, 93 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). With the foregoing in mind, the Court will address the merits of the instant motion.

**II.**

Defendants first state that Plaintiff's claim against CCS should be dismissed because "CCS is immune in their official capacity." However, the substance of Defendants' argument in this section actually seems to be that Plaintiff has failed to state a claim against CCS upon which relief may be granted. Indeed, Defendants argue that Plaintiff has failed to establish a basis of liability against CCS because "[n]othing in the complaint demonstrates that the action or inaction of any medical personnel (specifically Dr. Tangilag) occurred as result of a custom or policy implemented or endorsed by CCS . . . ." They further contend that even if Dr. Tangilag refused to see non-white inmates, Plaintiff cannot show that CCS had a policy or custom of refusing to "provide medical treatment" to non-white inmates because his complaint and amended complaints show that he was regularly seen by CCS's nurse practitioner.

As the Court observed in its initial review, the Sixth Circuit has held that the analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation.[1] *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.")). Thus, when a § 1983 claim is made against a private corporation like CCS, the plaintiff must allege that an unconstitutional policy was "the moving force of the plaintiff's constitutional deprivation." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994). The Supreme Court has identified three means

---

[1] "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).

3

by which a plaintiff may establish such a policy: (1) an officially promulgated policy as the term is commonly understood; (2) a pervasive custom or practice, or (3) a single act by an employee who has final policymaking authority with respect to the area in which the action was taken. *Id*. (citing *Monell*, 436 U.S. at 690; *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).

In light of the above case law, the Court finds Defendants' argument with regard to CCS unpersuasive. Although it is true that Plaintiff has not pointed to an official policy promulgated by CCS that caused the deprivation, his allegation that Dr. Tangilag regularly refused to see non-white inmates, including himself, because of their race could show a policy based upon either a pervasive custom or practice or acts by an employee with final policy-making authority. *See, e.g.*, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

### III.

Defendants also argue that Plaintiff has failed to state a claim against Dr. Tangilag because Plaintiff does not allege that Dr. Tangilag refused to see him because of race, but only that he "heard from other inmates that Dr. Tangilag 'did not see persons of color or Hispanics only caucasians.'" However, in Plaintiff's second amended complaint, in which he discusses the medical treatment he has received at KSP, he writes: "If you had a medical problem and you were not a Caucasians inmate, you will not be seen by Doctor Tangilag, African American and

4

others are past down to a nurse practitioner, by the name of Karen Ramey, no matter how many times you ask to see the Doctor if you are not Caucasians, you will not be seen, I talk to Dr. Tangilag one time in two years, and I was told that was a mistake" (DN 11). Moreover, Plaintiff indicates in his third amended complaint that Dr. Tangilag refused to see him because of his race on or about November 22, 2015 (DN 17). Based upon these statements, the Court is satisfied that Plaintiff has stated an equal protection claim against Dr. Tangilag sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion.

**IV.**

Finally, Defendants argue that Plaintiff's claim against them should be dismissed because they are barred by the applicable statute of limitations and because Plaintiff has not exhausted his administrative remedies.

Both of these arguments are affirmative defenses, and Defendants bear the burden of proving these defenses. Fed. R. Civ. P. 8(c)(1) provides that the statute of limitations is an affirmative defense. Moreover, in *Jones v. Bock*, the Supreme Court held that that "failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act (PLRA)], and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. 199, 216 (2007). In light of *Jones*, the Sixth Circuit has concluded that the exhaustion affirmative defense is best raised in a motion for summary judgment. *See, e.g.*, *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014); *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). This is because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (holding that when "matters outside the pleadings are presented to and not excluded by the court," a motion to

dismiss must be treated as a motion "for summary judgment under Rule 56") (quoting Fed. R. Civ P. 12(d)).

The Court finds that Defendants have failed to meet their burden regarding both of these affirmative defenses. First, as to the exhaustion of administrative remedies, Defendants have provided no evidence showing Plaintiff has not accomplished such with regard to his equal protection claims. And relatedly, while on the face of Plaintiff's complaint and amended complaints, it appears that the statute of limitations may bar Plaintiff's claims, the statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). In his response to Defendants' motion to dismiss, Plaintiff indicates that although he only attached one grievance to the complaint, he has filed several grievances against Dr. Tangilag. Without evidence regarding what additional administrative grievances were filed or when any such administrative grievances were filed or finished, the Court cannot calculate how long the statute of limitations may have been tolled or whether the statute of limitations has run on Plaintiff's equal protection claims. *See, e.g.*, *Thomas v. Slusher*, No. 1:17-cv-794, 2018 U.S. Dist. LEXIS 25916, at *10-11 (N.D. Ohio Feb. 16, 2018) (denying motion to dismiss for failing to meet evidentiary burden with regard to these two affirmative defenses). Accordingly, the Court will deny Defendants' motion to dismiss on these grounds.

**V.**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (DN 33) is **DENIED.** To the extent that Defendants continue to seek dismissal of this action based upon failure to exhaust and/or statute of limitations grounds, they should make such arguments in a properly supported motion for summary judgment.

Date:

cc: Plaintiff, *pro se*
 Counsel of Record
4413.011