UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-041-TBR

WILLIAM J. DAUGHERTY,                                                    PLAINTIFF

v.

KSP MEDICAL DEPARTMENT, *et al*.,                                        DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendants Correct Care Solutions and Dr. Shastine Tangilag's ("Defendants") Motion for Summary Judgment, [R. 60]. Plaintiff William Daugherty responded, [R. 64], and Defendants replied, [R. 66]. Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Defendants' Motion for Summary Judgment, [R. 60], is **GRANTED**.

**BACKGROUND**

Plaintiff Daugherty alleges that on November 22, 2015, he heard that Dr. Tangilag "did not see color inmates or Hispanic inmates . . . only Cacaucasions [sic] . . .." [R. 17 at 6 (Third Amended Complaint).] That day, Daugherty alleges that he went to see Dr. Tangilag on account of issues with his diabetes, but Dr. Tangilag would not see him. [*Id*.] In its previous Memorandum Opinion and Order, the Court interpreted this as a Fourteenth Amendment equal protection claim against Dr. Tangilag in both her official and individual capacities. [R. 21 at 8.] Though, the Court noted that Daugherty's official-capacity claim is actually against her employer, Correct Care Solutions. [*Id*. at 9.] Subsequently, Defendants CCS and Dr. Tangilag filed the Motion for Summary Judgment, [R. 60], that is currently before the Court.

**LEGAL STANDARD**

1

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner,* 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complaints, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir.1979)

(citation omitted), nor to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975).

Finally, it should be noted that "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment, unlike 'mere allegations or denials' in unverified pleadings." *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999)) (en banc).

## DISCUSSION

Defendants' make four arguments in support of their Motion for Summary Judgment: (1) Daugherty failed to exhaust administrative remedies, (2) Daugherty's Fourteenth Amendment rights were not violated, (3) Daugherty's claims are barred by the applicable statute of limitations, and (4) Dr. Tangilag and CCS are immune from suit in their official capacity. [*See generally* R. 60-1 (Summary Judgment Memorandum).] The Court agrees that Daugherty failed to exhaust administrative remedies. Even if Daugherty exhausted the available administrative remedies, the Court finds that Daugherty still failed to show that the Defendants purposefully discriminated against him in violation of the Fourteenth Amendment. Thus, in the interest of efficiency and judicial economy, the Court does not find it necessary to analyze the Defendants' latter two arguments at this time.

As an initial matter, the Court notes that on November 21, 2018, the Court ordered Defendants to file appropriate authentication of the grievance records and medical records cited in their Motion for Summary Judgment. [R.82.] On November 27, 2018, Defendants complied with this order. [R. 83.] Therefore, Defendants' Motion to Submit Grievance and Medical Record Certifications, [R. 83], is GRANTED.

### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act (PLRA) bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 204).

According to the "Inmate Grievance Procedure" within the Kentucky Corrections Policies and Procedures, submitted by the Defendants, a "Health care concern" is a grievable issue. [R. 60-2 at 3 (Grievance Procedure).] The "Inmate Grievance Process" involves four steps for the filing and adjudication of inmate grievances. [*Id*. at 8-14.][1] At the first step, an informal resolution attempts to resolve the inmate's properly filed grievance. [*Id*. at 8-11.] The policy requires that the initial grievance must be filed within five days after the complained-of incident occurs. [*Id*. at 9.] If a grievant is dissatisfied after step one, he may request a review by the Grievance Committee. [*Id*. at 11-13.] At this second step, the Grievance Committee reviews the grievance and makes a written recommendation. [*Id*.] If a grievant is still dissatisfied, he may

---

[1] Although Daugherty's claim involves health care, the section entitled "Health Care Grievance Process" instructs that "[g]rievances involving unfair or discriminatory treatment, safety, or sanitation in medical, dental or mental health care services shall be considered in the previous inmate grievance process." [R. 60-2 at 15.] The "previous inmate grievance process" it speaks of is the "Inmate Grievance Process" the Court describes. Even though Defendants argue that Daugherty failed to comply with the "Health Care Grievance Process", the argument remains the same: "Mr. Daugherty never filed any grievance against Dr. Tangilag or CCS, despite his claims to the contrary." [R. 60-1 at 4.]

appeal the grievance to the Warden at step three. [*Id.* at 13.] Finally, to conclude the process, if the grievant is dissatisfied with the Warden's decision, at step four he may appeal to the Commissioner of the Kentucky Department of Corrections ("KDOC"). [*Id.* at 13–14.]

Defendants argue that Daugherty's failure to file any grievance against Dr. Tangilag or CCS entitles them to summary judgment as a matter of law. [R. 60-1 at 4.] As evidence of this argument, Defendants attached a certified copy of the grievance records of William J. Daugherty from KSP. [*See* R. 83-1 at 2 (Grievance Records).] Of the many grievances therein, there is not a single grievance against Dr. Tangilag or CCS. [*See generally id.*] Thus, the Defendants have presented evidence that proves Daugherty did not exhaust his administrative remedies for the actions alleged in his complaint. *See, e.g., Cooper v. Belt*, No. 5:17-CV-030-TBR, 2018 WL 4623349, at *3 (W.D. Ky. Sept. 26, 2018) (holding that the prisoner plaintiff failed to exhaust administrative remedies when the defendants provided the record of grievances and none involved the incidents at issue). In response, Daugherty has provided no evidence proving that he ever filed a grievance against Dr. Tangilag or CCS. Therefore, the Court finds that Daugherty failed to exhaust the available administrative remedies, and Defendants' Motion for Summary Judgment, [R. 60], is GRANTED.

## B. Fourteenth Amendment Violation

Defendants also argue that Daugherty's claims fail because "he has failed to show that the defendants purposefully discriminated against him in violation of the Fourteenth Amendment." [R. 60-1 at 5.] Daugherty alleges that Dr. Tangilag refused to see him due to his race. [R. 17 at 6.] In opposition to Daugherty's allegation, the Defendants provided a portion of Daugherty's certified medical records, which show that Dr. Tangilag examined Daugherty three times in November of 2015 alone. [R. 60-1 at 6; R. 63 at 2-15.]

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani*, 432 F. App'x at 458. Daugherty has not presented any direct evidence of discrimination. Also, Daugherty failed to make a prima facie showing of discrimination under the indirect burden-shifting framework of *McDonnell Douglas* because he has not presented any evidence that Dr. Tangilag treated him differently than any similarly-situated, Caucasian prisoner. *Id.*

Therefore, even if Daugherty exhausted the available administrative remedies, Defendants are still entitled to summary judgment due to Daugherty's failure to satisfy his burden of production after Defendants showed the absence of a genuine dispute of material fact as to at least one essential element of his claim.

### C. Daugherty's Additional Motions

As mentioned above, subsequent to Defendants filing the Motion for Summary Judgment at issue, Daugherty filed a Response, [R. 64], and Defendants filed a Reply, [R. 66.] Thereafter, Daugherty filed four additional documents, each styled as "motion to the Court," which the Court docketed as sur-replies. [R. 67; 72; 73; 76.] On October 3, 2018, the Court filed an order stating: "Plaintiff is hereby **WARNED** that any further responses or replies to the motion for summary judgment are **PROHIBITED** and, if filed, will be **STRICKEN from the record**." [R. 79.]

Subsequently, Daugherty filed two more motions, each entitled "Motion to the Court," in which it appears that Daugherty asks the Court to consider further allegations against Dr. Tangilag. [R. 80; R. 84.] Beyond the fact that the Court has warned Daugherty that such motions will be stricken, the Court finds these motions are now moot as it has granted summary judgment in favor of Defendants. Thus, the two additional motions filed by Daugherty, entitled "Motion to the Court," [R. 80; R. 84], are DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Submit Grievance and Medical Record Certifications, [R. 83], is **GRANTED**. Defendants' Motion for Summary Judgment, [R. 60], is **GRANTED**. Daugherty's Motion to the Court, [R. 80] is **DENIED**. Daugherty's additional Motion to the Court, [R. 84], is **DENIED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Counsel of Record

William J. Daugherty, pro se
173232
KENTUCKY STATE PENITENTIARY
266 Water Street
Eddyville, KY 42038

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 21, 2018